RUTH WIGHT BILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BEATRICE BILL TALBOT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 79853, 79854.   Promulgated October 7, 1938.

*William W. Johnston, C. P. A.*, for the petitioners.
*Bernard D. Daniels, Esq.*, for the respondent.

798

OPINION.

ARUNDELL: The claim of these cases for a partial worthlessness deduction is made under that part of section 23 (j) of the Revenue Act of 1932, which authorizes the Commissioner to allow a deduction of less than the whole amount of a debt "when satisfied that a debt is recoverable only in part   *   *   *."

The Commissioner's regulations have long provided for deductions for entire or partial worthlessness of bonds where the owner ascertains that upon maturity he will recover none or only a part of the debt evidenced by the bonds. The same regulations have also provided that no deduction may be taken merely on account of market fluctuation. Art. 154, Regulations 62, 65, 69; art. 194, Regulations 74, 77. We have followed the same rules and have refused to allow bad debt deductions based on nothing more than fluctuations in value. "Market fluctuation   *   *   *   is an unsafe criterion for determining the reasonableness of an addition to a reserve for bad debts   *   *   *." *South Hills Trust Co.*, 19 B. T. A. 674, 678. "Admission of a decline in value of securities prior to maturity by no means implies an admission as to the obligor's ultimate condition or that its obligations will not be paid or paid only in part upon maturity." *Securities-Allied Corporation*, 36 B. T. A. 168, 177; affd., 95 Fed. (2d) 384. In the latter case we quoted the Commissioner's regulations, art. 194, Regulations 74, and held that the requirements thereof must be met by the taxpayer. On the other hand, where the evidence satisfactorily establishes "that the debts were, at least to the extent of the charge-off, beyond recovery", we have allowed a deduction for partial worthlessness. *Second National Bank of Philadelphia*, 33 B. T. A. 750. In that case the bonds with respect to which we allowed a deduction were in default, the debtors were in receivership, and a national bank examiner directed that they be written down on the books of the bank.

The question here, as in other bad debt cases, must be decided upon examination of the facts to determine to what extent there is an ascertainment of worthlessness, or, to use the view of the regulations, to what extent the taxpayer will recover upon maturity of the bonds. This question can not, as pointed out above, be solved solely by reference to fluctuation in market prices. Included in the stipulated facts in this case are profit and loss statements and balance sheets for the years 1931 to 1936, inclusive. Upon examination of these we find that while there was a drop in railway operating revenues from $54,426,916 in 1931 to $40,712,215 in 1932, nevertheless at the end of 1932 the railway company had a profit and loss balance of $4,694,448. Its balance sheet carries the same item, $4,694,448, which we construe as being the same as surplus in the balance sheets of manufacturing or merchandising concerns. In determining the status of the bonds there must be added to the surplus the amount set aside for capital stock liability, which in round figures is $114,000,000. These facts alone give a surplus in excess of $118,000,000 to secure the outstanding prior lien bonds of $183,445,400. Moreover, it is stipulated that the entire issue of prior lien bonds is secured equally by mortgage or collateral lien on the railway's "entire property." The road and equipment alone are valued in the balance sheets at over $420,000,000. In addition the bonds are secured by $46,000,000 face value of stocks and bonds of affiliated companies. With these assets securing the bonds, we are of the opinion that there could have been no determination by the petitioners in 1932 that they would recover only $200 per $1,000 face value of their bonds.

Counsel for petitioners makes some argument based on liquidating value of the railway company's assets. This is purely argument, unsupported by facts. There is no evidence as to what the balance sheet values were based on. Assuming that they are going concern values, it was part of petitioners' case to prove any other values on which the decision should rest. This they did not do.

Based on the stipulated facts showing the amount of bonds outstanding, the security for the bonds, and the income and general financial condition of the debtor, we hold that the petitioners have not established that a determination could have been made in 1932 that only a part of the debts evidenced by the bonds would be recovered at maturity. Consequently, we affirm the respondent.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

STERNHAGEN, dissenting: These proceedings have been submitted upon a stipulation, and there is therefore no room for dispute as to the primary or evidentiary facts. The only question is whether they

reasonably support a finding that the debt covered by the railroad's bonds was recoverable only in part. If they do, the finding should not be withheld through any fear that unforeseen events or possible economic conditions may perchance bring about a complete recovery of the debt at its maturity in 1950.

It seems to me clear from the evidence that at the end of the taxable year no one could reasonably doubt that the debt would not be entirely paid. Earnings had been steadily diminishing, interest was defaulted, and a receiver had been appointed at the behest of a creditor. The petition for receiver averred that the interest ($13,330,491) exceeded the gross operating income ($10,211,785). There is not the slightest indication in the stipulation that conditions would improve or that the prospect for complete recovery in 1950 would become any brighter. Certainly no one in the open market was optimistic enough to appraise the chances as very good. Why then should the Board refuse to recognize what the market so realistically reflects? I do not mean to stand for the idea that fluctuations in market value of bonds are to be taken as gauges of the extent of recoverability or as measures of the statutory deductions. That idea was rejected in *Second National Bank of Philadelphia*, 33 B. T. A. 750. But when the other evidence indicates that the debt is recoverable only in part, the market prices may help to give realistic assurance that the taxpayer's best judgment of the future is not too lugubrious.

This, I thought, is what the full Board had decided in *Second National Bank of Philadelphia, supra*. There the taxpayer's officers weighed the extent of recoverability of some railroad and other bonded debts, "which in 1931 were in default as to interest, and the debtor was, as to each, in receivership", concluded they were recoverable only in part, and wrote off and deducted the remainder of $26,050. The charge-off was made before the bank examiner had appeared and entirely on the taxpayer's own initiative. The evidence of nonrecoverability was quantitatively less and was no more convincing than this, and upon such evidence it was, after full Board review, held that the deductions were proper. In that case there was another point—a further charge-off upon the mere direction of a national bank examiner the Board held was not within the statute; but that was because it was thought that a categorical direction of a bank examiner based only upon a drop in market value was not sufficient to satisfy the revenue act. The $26,050 deduction was not affected by the bank examiner's direction but was supported by default and receivership. So that decision seems to me to be a complete precedent for a deduction here, and there is no reason to discriminate between a national bank acting upon the judgment of its officers and an individual acting upon his own

judgment. Both must be tested by the evidence of record, and I think the evidence here supports the taxpayer's judgment no less than did the evidence there. Either that decision should be overruled (although it was not appealed, and the Commissioner acquiesced in it, C. B. XV-2, p. 21), or this decision should follow it. They can not consistently stand together.

As to the quantum of recoverability, it seems to me the taxpayer was well this side of the doubtful area when she adopted 20 as the recoverable part and treated only the excess above this as the nonrecoverable part which she might properly deduct.

MELLOTT agrees with this dissent.